**KIEWIT TEXAS MINING COMPANY, et al., Appellants,**

v.

**Edwin C. INGLISH, Jr., et al., Appellees.**

**No. 10–92–211–CV.**

Court of Appeals of Texas, Waco.

Oct. 13, 1993.

John R. Breihan, Karen L. Watkins, McGinnis, Lochridge & Kilgore, L.L.P., Aus-

tin, Edwin P. Horner (of counsel), Waco, for appellants.

F. Franklin Honea, Payne & Vendig, P.C., Dallas, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Edwin Inglish, Jr. and Mary Raine, each acting individually and in their various representative capacities, sued Kiewit Texas Mining Company and Phillips Coal Company, lessees, for wrongfully repudiating a lignite lease in 1989. Kiewit and Phillips operated the lease as a joint venture under the name of Walnut Creek Mining Company. The lease, which had a twenty-five-year primary term, obligated the defendants to pay annual royalties based on the acres leased as well as a per-acre bonus at the end of the twelfth and twenty-fifth year. However, the annual royalty was to be paid only "while this Lease is in force," and the twenty-fifth-year bonus was to be paid only "if this Lease is to be extended [beyond its twenty-fifth year] by other provisions herein."

Following a nonjury trial, the court rendered a judgment against the defendants for $1,176,049.74, attorney's fees, prejudgment interest, and costs. The judgment apparently included recovery of the annual royalty and twelfth-year bonus due in 1989, the year of the breach, and the present value of all annual royalties that would have been payable had the lease been in effect during the remaining thirteen years of the primary term. Likewise, the court apparently awarded the plaintiffs the present value of the twenty-fifth-year bonus.

Conceding on appeal that they repudiated and breached the lease in 1989, the defendants do not object to the award of the annual royalty and twelfth-year bonus due in 1989. Instead, they concentrate their principal attack on the award of the annual royalties and bonus due after the breach. We must decide the proper measure of damages for the anticipatory breach of the lease.

## LEASE TERMS

The lease, which covered 1,746.47 acres, was effective June 28, 1977. Upon expiration or extension of its twenty-five-year primary term, it would remain in effect "as long thereafter as (a) coal is being produced from the Premises, and/or (b) mining operations are being conducted on the Premises on a continuous basis, and/or (c) this Lease is maintained in force and effect under any other provision herein contained."

The lease provided for a "production royalty" to be paid on "all coal produced or mined from the Premises and sold or used." However, the court found that no coal had ever been produced or mined.

Paragraph 4 required the lessee to pay an annual "advance royalty":

4. ... Within one (1) year from the date hereof, Lessee agrees to pay or tender to Lessor as an advance royalty for the next ensuing year the sum of [$100] per acre.... On or before each anniversary date thereafter while this Lease is in force, Lessee agrees to pay or tender to Lessor as an advance royalty for the next ensuing year the sum of [$100] per acre.... It is agreed that Lessee shall be entitled to recoup advance royalty payments made to Lessor under paragraph 4 ... only to the extent such recoupment can be effected by deducting and retaining 75% of all production royalties payable to Lessor in a particular month (or quarter, as the case may be) ... until the aggregate amount of such deductions equals the aggregate amount of the advance royalties theretofore paid to Lessor....

Paragraphs 21 and 22 related to "bonus" payments:

21. ... In the event that mining operations have not been commenced by Lessee hereunder prior to the fifth anniversary date hereof (June 28, 1982), Lessee shall pay or tender to Lessor, within thirty days after said fifth anniversary date, an additional bonus consideration for this Lease equal to [$100] per acre....

[Paragraph 21 also required the lessee to pay a bonus of $200 an acre on the eighth and

twelfth anniversaries, if mining had not commenced prior to those dates.]

22. ... Upon the twenty-fifth (25th) anniversary date of this Lease and if this Lease is to be extended by other provisions herein, then this Lease shall then terminate unless, on or prior to such date, Lessee shall pay Lessor a sum of money equal to [$500] per acre (representing a $400.00 per acre additional bonus, and the $100.00 per acre advance royalty for the succeeding year under paragraph 4 of this Lease).... If such payment is made then this Lease shall continue in force and effect as provided by other provisions of this Lease.

Finally, paragraph 11(d) gave the lessee the option of surrendering the lease:

Lessee may at any time from this date execute and deliver to Lessor or place of record a legally sufficient release covering all of the Premises and thereupon terminate this Lease as to all of the Premises. Lessee shall thereupon be released from all further obligations and duties as to the Premises so released, including any obligation to make advance royalty payments described in paragraph 4, except obligations accrued as of the date of surrender....

Paragraph 23, however, restricted the lessee's right of surrender:

Attached to this Lease, as Exhibit "D", is a list of Coal Leases, excluding this Lease, all naming Lessee as the mining lessee thereunder, all covering tracts of adjacent lands. Notwithstanding the provisions of paragraphs 11 and 14 hereof, Lessee may not release any of the Premises covered hereby or assign this Lease unless and until it likewise executes, delivers, and records like releases or assignments covering all lands conveyed by the leases tabulated in Exhibit "D". This provision shall have no application to releases subsequent to the completion of mining and reclamation.

## FINDINGS AND CONCLUSIONS

The parties' contentions are best understood against the background of these fact-findings and conclusions by the court:

FINDINGS

1. On the twelfth anniversary of the lease, June 28, 1989, the defendants attempted to partially release the coal lease without surrendering all of the leases listed in Exhibit D.

2. The defendants failed to pay the annual advance royalty and twelfth-year bonus due June 28, 1989.

3. The attempted partial release and the failure to pay the advance royalty and twelfth-year bonus on June 28, 1989, evidenced an intent by the defendants to repudiate the lease.

4. No coal was ever mined under the lease.

5. The defendants executed releases of all coal leases listed in Exhibit D in March and April 1991 and recorded a second release of the plaintiffs' lease on March 14, 1991.

CONCLUSIONS

1. The defendants repudiated and breached the lease on June 28, 1989.

2. The plaintiffs accepted the defendants' repudiation.

3. The lease terminated on June 28, 1989.

4. The second release, dated March 14, 1991, was ineffective to surrender the lease because the lease had previously terminated in June 1989.

5. The proper measure of damages for anticipatory repudiation of the lease is the present value of all future payments due to be paid under the lease—i.e., those damages that would have been recoverable if the defendants had waited until the time of performance before breaching the agreement.

## DID THE LEASE LIMIT FUTURE DAMAGES?

One of the contentions is that paragraph 11(f)(iii) restricted damages for a breach to the recovery of payments that were "due or accrued or as may become due before such termination becomes effective." Thus, the defendants argue, the court erred as a matter of law when it awarded recovery of royal-

ty and bonus payments due after June 28, 1989.

Paragraph 11(f) of the lease provided:

(f) Termination of this Lease under any paragraph or on account of any circumstances or event or on account of the fault, option, or action of any person, entity, or party shall be subject to this subparagraph 11(f) and its subparts.

.   ·   .   .   .   .

(iii) Termination of this Lease shall in no way diminish or terminate the obligations of Lessee to make any payments to Lessor as may then be due or accrued or as may become due before such termination becomes effective and such termination shall not entitle Lessee to demand return of any amounts paid to Lessor prior to such termination, including, but not limited to, unearned advance payments.

■■  As with any contract, the ultimate goal in interpreting a lease is to determine the parties' intent. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727–28 (Tex. 1981). Their intent will usually be expressed in the lease's language. *Id.* at 728. Paragraph 11(f)(iii) is plain and unambiguous, and the intent of the parties is clearly stated in its language. It does not contain any language purporting to limit or specify the type of damages that a non-breaching party can recover. Instead, its plain language indicates that the parties intended the provision to express ·and clarify the lessee's responsibility of making any payment that may have become due *before* the lease's termination, regardless of whether the payment had been made at the time of termination, and to prohibit the lessee from recouping any payment made *before* termination is effective. We therefore reject the defendants' interpretation of the provision as prohibiting the recovery of payments due *after* 1989. Point five is overruled.

### PRINCIPAL CONTENTIONS

As already noted, the defendants' principal complaint relates to the award of the present value of future payments under the lease. They first argue that the plaintiffs cannot recover payments due after the breach be-cause the lease terminated with the plaintiffs' acceptance of their repudiation, which was before their obligation for future payments ever matured. Finally, they contend there is no evidence to prove that the conditions on which their obligation to make future payments was predicated would ever occur.

Relying on *Pollack v. Pollack,* 39 S.W.2d 853, 855 (Tex. Comm'n App.1931, holding approved), the plaintiffs insist however that the proper measure of damages is the total of all payments that had accrued at the time of the breach and the present value of all payments they would have received thereafter had the lease been fully performed. According to the plaintiffs, the court properly awarded them the present value of all future payments that could have been paid under the lease. As we explain later, their interpretation of *Pollack* is incorrect.

### CONDITIONS AND THEIR NON–OCCURRENCE

We preface our discussion of the measure of damages with an interpretation of the paragraphs relating to the defendants' obligation to pay annual royalties and the twenty-fifth-year bonus:

4.  ... Within one (1) year from the date hereof, Lessee agrees to pay or tender to Lessor as an advance royalty for the next ensuing year the sum of [$100] per acre.... On or before each anniversary date thereafter *while this Lease is in force,* Lessee agrees to pay or tender to Lessor as an advance royalty for the next ensuing year the sum of [$100] per acre.

.   .   .   .   .

22.  ... Upon the twenty-fifth (25th) anniversary date of this Lease *and if this Lease is to be extended by other provisions herein,* then this Lease shall then terminate unless, on or prior to such date, Lessee shall pay Lessor a sum of money equal to [$500] per acre (representing a $400.00 per acre additional bonus, and the $100.00 per acre advance royalty for the succeeding year under paragraph 4 of this Lease).... If such payment is made then this Lease shall continue in force and ef-

fect as provided by other provisions of this Lease.

(Emphasis added).

"Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). Here, the parties expressly conditioned the lessee's obligations upon the happening of future events or occurrences. First, the lease had to be in force on its anniversary date before the lessee would be obligated to pay an annual royalty on that date for the ensuing year. Second, the lease must be extended beyond its primary term by other provisions before the lessee would ever have to consider whether to pay the twenty-fifth-year bonus to extend the lease. Neither of these events ever occurred after the breach.

■ Non-occurrence of a condition is legally excused when a party's repudiation contributes materially to its non-occurrence. RESTATEMENT (SECOND) OF CONTRACTS § 255 (1981). Non-occurrence is not excused, however, "if the condition would not have occurred in any event." *Id.* § 255 cmt. a.

■ Therefore, the plaintiffs cannot recover the annual royalties or twenty-fifth-year bonus due after the breach unless they plead and prove that each condition would have occurred had the breach not happened. *See City of Fort Worth v. Rosedale Park Apartments,* 276 S.W.2d 395, 397 (Tex.Civ.App.—Fort Worth 1955, writ ref'd); *Howell v. Kelly,* 534 S.W.2d 737, 740 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

■ The defendants contend that the lease "terminated" when the plaintiffs accepted their anticipatory repudiation. Based on this premise they argue in their first two points that, because the lease terminated in 1989, they never became obligated as a matter of law to pay annual royalties after 1989 or the twenty-fifth-year bonus. We reject this argument. The breach did not modify or cancel the lease's provisions. *See Newman v. San Antonio Traction Co.,* 155 S.W. 688, 690 (Tex.Civ.App.—San Antonio 1913, no writ). Instead, the defendants' liability for future payments depends upon whether non-occurrence of the conditions on which their obligations are based were excused. Points one and two are overruled.

## MEASURE OF DAMAGES

■ Damages for breach of contract are to compensate the innocent party for loss or damage actually sustained. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952). An anticipatory breach does not change this usual rule for measuring damages, but merely requires that an accurate estimate of the probability of future performance of the lease be substituted for the certainty of performance. Walter H.E. Jaeger, 11 WILLISTON ON CONTRACTS § 1397 (Baker Voorhis, 3rd ed. 1968). The face value of a contract is ordinarily different than the value of its expected performance, with the uncertainty of future performance usually accounting for the difference. *Id.* § 1339.

■ Thus, the plaintiffs are only entitled to recover the value to them of the "expected performance" of the contract, which is the loss they actually sustained from the anticipatory breach. *See P.G. Lake, Inc. v. Sheffield,* 438 S.W.2d 952, 956 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF CONTRACTS § 344(a); WILLISTON ON CONTRACTS § 1343. They are not automatically entitled to recover, as they contend, the present value of the remaining face value of the contract. Consequently, the plaintiffs also had the burden of establishing with reasonable certainty the value of the expected performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 352 cmt. a.

The plaintiffs rely on the following quote from *Pollack* to buttress their contention that they are entitled to the present value of all future annual royalties and the twenty-fifth-year bonus: "[The plaintiff] is entitled in one suit to receive in damages the present value of all that he would have received if the contract had been performed." *See Pollack,* 39 S.W.2d at 855. Taken and applied literally, the quote would entitle them to recover what they were awarded in the judgment.

However, accepting such a literal interpretation would require us to ignore conditions the parties agreed to place on the defendants' liability, which would effectively transform payment of the annual royalties and the twenty-fifth-year bonus from a conditional to an unconditional obligation. Under the plaintiffs' interpretation, the innocent party's actual loss from an anticipatory breach will always be measured by the present value of what remains of the contract's face value.

We refuse to adopt a literal interpretation of the language quoted from *Pollack* because it would be contrary to well-established principles of contract law. Furthermore, the facts in *Pollack* make clear that the plaintiff there was only allowed to recover the present value of the "expected performance" of the contract, i.e., the present value of the money the plaintiff would have received under the contract based on the life expectancy of both parties.

## EVIDENCE OF EXPECTED PERFORMANCE

The record is devoid of any specific evidence tending to prove that, if the breach had not occurred, the lease would have been in force on its anniversary date during each of the remaining thirteen years of its primary term. Nor does the record contain any evidence tending to prove that the lease would have been extended beyond its primary term. What the record does reflect, however, is that the defendants surrendered all of the Exhibit D leases in March and April 1991 and attempted to surrender this lease by recording a second release on May 14, 1991. The surrender clause prohibited the defendants from surrendering the plaintiffs' lease unless they surrendered all of the Exhibit D leases as well. Of course, the defendants could not take advantage of the surrender provision in the lease they had breached. *See Baker Marine Corp. v. Weatherby Eng. Co.*, 710 S.W.2d 690, 696 (Tex.App.—Corpus Christi 1986, no writ).

Drawing inferences from the evidence as a whole, one could reasonably conclude that the lease would have been in force on June 28, 1990, if the breach had not occurred in 1989. The defendants still retained all of

their Exhibit D leases on the 1990 anniversary date. One cannot reach the same conclusion, however, with respect to the years after 1990. In fact, the evidence conclusively establishes that had the breach not occurred in 1989 the lease would not have been in force on June 28, 1991, because it would have been surrendered with the Exhibit D leases before the 1991 anniversary date. To reach a contrary conclusion, one would have to postulate that the defendants would have surrendered all of the Exhibit D leases in 1991 but would have retained this particular lease through and beyond the end of its primary term. Such a proposition is incredulous under the record.

The condition precedent to the payment of an annual royalty was that the lease must be in force on its anniversary date. Obviously, the defendants' breach in 1989 materially contributed to the non-occurrence of this condition during the remaining thirteen years of the primary term. However, the evidence is factually sufficient to prove that the lease would have been in force on June 28, 1990, even if the breach had not occurred. For this reason, non-occurrence of the condition in 1990 is legally excused. *See* RESTATEMENT (SECOND) OF CONTRACTS § 255. As for years after 1990, however, non-occurrences of the condition are not excused because the evidence conclusively establishes that the condition would not have occurred even if the lease had not been breached. *See id.* § 255 cmt. a. Point four, in which the defendants contend there is no evidence the lease would have been in force after 1989, is overruled as to 1990 but sustained with respect to all years after 1990.

The condition precedent to any payment of the twenty-fifth-year bonus was that the lease had to be extended beyond its primary term by other provisions in the lease. Then and only then would the lessee have to consider whether to pay the bonus. Non-occurrence of that condition is likewise not excused because the evidence conclusively establishes that the condition would not have occurred in any event. *See id.* Accordingly, we also sustain point three in which the defendants argue that the evidence is legally insufficient to prove the lease would have

been extended beyond its primary term, with or without the breach.

Our holding should not be interpreted as implicitly giving effect to the surrender provision in the breached lease. The defendants could not breach the lease and then take advantage of one of its favorable provisions. *See Baker Marine Corp.,* 710 S.W.2d at 696. What conclusively establishes that the lease would not have been in force in any event on June 28, 1991, is not the defendants' attempted surrender of the lease by a second release recorded on May 14, 1991, but the surrender of the Exhibit D leases in March and April 1991.

In summary, there is no evidence to support the award of annual royalties after 1990 or the twenty-fifth-year bonus. The evidence is factually sufficient, however, to support the award of the 1990 annual royalty and, of course, the annual royalty and twelfth-year bonus due on June 28, 1989, the recovery of which is not in dispute.

### ATTORNEY'S FEES

■ A party who fails to respond to or to supplement a response to a "request for discovery" cannot present at trial the evidence he had a duty to provide in a response or supplement, unless the court finds good cause for its admission. TEX.R.CIV.P. 215(5). Point six is that the court should have excluded any evidence of attorney's fees in excess of the amount contained in an affidavit filed by the plaintiffs' attorney in connection with a motion for a summary judgment. The defendants contend that their interrogatory on damages, which asked the plaintiffs to describe all "items of damage" sought in the trial, covered attorney's fees.

■ A party suing for breach of contract can recover reasonable attorney's fees "in addition to the amount of a valid claim and costs." *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986). By differentiating between attorney's fees and "the amount of a valid claim"—i.e., damages—the legislature clearly did not intend attorney's fees to be considered as damages in such a suit. Thus, the defendants' interrogatory on damages did not constitute a "request for discov-

ery" of the plaintiffs' attorney's fees. Under the circumstances, the plaintiffs had no duty to respond to the interrogatory by listing their attorney's fees or to supplement the answer to the interrogatory with such information. Rule 215(5) thus did not limit or bar them from presenting evidence of their attorney's fees at trial. *See* TEX.R.CIV.P. 215(5). Point six is overruled.

### DISPOSITION

The plaintiffs are only entitled to recover the annual advance royalties for 1989 and 1990 and the bonus for 1989, prejudgment interest on those amounts, reasonable attorney's fees in the amounts set forth in the judgment, and costs. However, they are not entitled to recover the present value of annual advance royalties for any year after 1990 or the present value of the twenty-fifth-year bonus.

There is error in the judgment. Because the trial court is better situated to calculate and render the judgment that should be entered, we deem it appropriate under the circumstances to remand to the trial court for that purpose. Accordingly, we reverse the judgment and remand the cause to the trial court with instructions to render judgment in accordance with this opinion.