Cause No. 14-07-00404-CV Reversed and Remanded; Cause No.
14-08-00013-CV Affirmed; and Opinion on Remand filed June 2, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-07-00404-CV



Clear Lake City
Water Authority, Appellant 

v.

Friendswood
Development Company, LTD., Appellee 



On Appeal from
the 281st District Court

Harris County, Texas

Trial Court
Cause No. 2006-63998



 



NO. 14-08-00013-CV



Clear Lake City
Water Authority, Appellant 

v.

Kirby Lake
Development, LTD., Miter Development Company, L.L.C. and Taylor Lake, LTD., Appellees 



On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 2005-17524










 

OPINION ON REMAND

 

This consolidated appeal is on remand from the Texas
Supreme Court.  Kirby Lake Development, Ltd., Miter Development Co., L.L.C.,
Taylor Lake, Ltd., and Friendswood Development Co. (collectively, the
“Developers”) sued Clear Lake City Water Authority (the “Authority”) for breach
of contract.  The trial courts granted the Developers’ summary judgments.

In our original opinions, we reversed the trial
courts’ summary judgments and rendered judgment in favor of the Authority on a
contract interpretation ground in both cases.  See Clear Lake City Water
Auth. v. Kirby Lake Dev., Ltd., 274 S.W.3d 41 (Tex. App.—Houston [14th
Dist.] 2008) (“Kirby Lake II”), rev’d, 320 S.W.3d 829, 842–43
(Tex. 2010) (“Kirby Lake  IV”); Clear Lake City Water Auth. v. Friendswood
Dev. Co., No. 14-07-00404-CV, 2008 WL 5131932 (Tex. App.—Houston [14th
Dist.] Dec. 9, 2008) (mem. op.) (“Friendswood II”), rev’d, Kirby
Lake IV, 320 S.W.3d at 842–43.  The Texas Supreme Court reversed and
remanded, determining that our contract interpretation was erroneous and that
the Authority had breached the agreements with the Developers by failing to
include a measure authorizing the issuance of bonds for purchase of the
Developers’ facilities in the 2004 bond election (the “2004 bond measure”).[1]  Kirby
Lake IV, 320 S.W.3d at 832.  

On remand, this court granted the Developers’ motion
to consolidate the two cases.  The issues remaining on remand are whether (1)
the Developers conclusively established the causation element of their breach
of contract claim, (2) the Authority raised a fact issue on its affirmative
defense of lack of causation, (3) the trial courts erred in striking portions
of the Authority’s summary-judgment evidence, (4) the trial courts erred in
awarding contractual interest because the Developers failed to conclusively
prove the applicable interest rate, (5) the trial courts erred in setting pre-
and post-judgment interest rates, (6) the trial court in Kirby Lake[2] erred
in issuing a writ of execution,[3]
and (7) the trial court in Friendswood erred in granting a mandatory
injunction that the Authority raise taxes to pay the judgment.  We affirm the
judgment in the Kirby Lake case, but we reverse the judgment in Friendswood
and remand for further proceedings consistent with this opinion.

BACKGROUND

The overall facts of these cases are well-developed
in the Texas Supreme Court’s opinion in Kirby Lake Development Limited v.
Clear Lake City Water Authority.  See id. at 832–35.  Therefore, we
focus our background exposition on the facts relevant to the remaining
dispositive issues and direct the reader to the Supreme Court’s opinion for a
more general background.

As part of constructing new residential developments,
the Developers built water and sewer facilities.  Pursuant to “pre-funding”
agreements among the parties, the Authority agreed to operate the facilities
under a rent-free lease with the Developers, and the Authority was responsible
for maintenance and insurance of the facilities and water and sewage lines. 
The Authority further agreed to include measures authorizing bonds sufficient
to reimburse the Developers for seventy percent of their construction in “any”
bond election held subsequent to the effective date of the agreements.  If such
a bond measure passed, the Authority was obliged to buy the facilities from the
Developers with this bond money.

In 1998, the Authority held two bond elections that
included such bond measures.  These measures failed to pass.[4]  In
September 2004, the Authority held another bond election which did not include
such a bond measure.  The bonds proposed in this election were approved by the
voters.  The Developers then sued the Authority for breach of contract.  The
parties filed several motions, pleas, and responses, including cross-motions
for summary judgment.  As is relevant to these cases on remand,[5] Friendswood
Development Company (“Friendswood”) asserted in its summary-judgment motion
that (1) voter approval was no longer a condition precedent to the Authority’s
obligation to purchase the facilities from them because the Authority’s breach
of contract, i.e., its failure to include the 2004 bond measure in the
September 2004 bond election, prevented the occurrence of the condition; (2) it
was entitled to $1,120,235.99 in damages, as well as pre- and post-judgment
interest on its damages, and (3) section 49.066(b) of the Texas Water Code
provides that courts may order a water authority board to “levy, assess, and
collect taxes or assessments to pay [a] judgment.”  The Kirby Lake plaintiffs
likewise contended in their summary-judgment motions that the condition
precedent of voter approval was no longer necessary to their recovery of
contract damages, and they also asserted that the contract rate could be
calculated and recovered at the rate of interest set on the bonds authorized by
the September 2004 election.  

The Authority responded in both cases by asserting
that:  (1) the funding for the sales requires voter approval, and no voter
approval was given, (2) the Developers cannot prove that voter approval would
have been given, and (3) the Authority can prove that the voters would have
rejected the bonds.  On September 5, 2005, the trial court in Kirby Lake
granted the Kirby Lake plaintiffs’ motions for summary judgment.  In its
final judgment, the trial court awarded damages as follows: 
(a) $713,141.00 to Kirby Lake Development, Ltd.; (b) $514,783.00 to
Taylor Lake, Ltd.; and (c) $80,032.00 to Miter Development Company, LLC. 
The trial court further ordered that the Kirby Lake plaintiffs recover 6
percent pre-judgment interest[6]
and 8.25 percent post-judgment interest on their damages awards and costs of
court.  The trial court further ordered that execution issue for the judgment. 
In its final judgment in the Friendswood case, signed February 12, 2007,
the trial court granted Friendswood’s motion for summary judgment, awarded
Friendswood $1,120,235.00 in damages with pre-judgment interest set at 6
percent[7]
and post-judgment interest set at 8.25 percent and costs of court, and ordered
the Authority’s board of directors to levy, assess, and collect taxes or
assessments to pay the amounts awarded to Friendswood.  

The Authority filed motions for new trial in both
cases.  As is relevant here, the Authority challenged causation of damages, the
pre- and post-judgment interest rates awarded to the Developers, the injunctive
relief awarded in the Friendswood case requiring the Authority to assess
and collect taxes to pay the damages awarded to Friendswood, and the order that
execution issue in the Kirby Lake case.  These motions for new trial
were overruled,[8]
and these appeals timely followed.

ANALYSIS

A.        Standard
of Review

We review a trial court’s summary judgment de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  In
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, indulging every reasonable inference, and we resolve any doubts in
the nonmovant’s favor.  Nixon v. Mr. Prop. Management Co., 690 S.W.2d
546, 549 (Tex. 1985).  Where, as here, the trial court grants the judgment
without specifying the grounds, we affirm the summary judgment if any of the
grounds presented are meritorious.  FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872B73
(Tex. 2000).  In a traditional motion for summary judgment, if the movant’s
motion and summary judgment evidence facially establish its right to judgment
as a matter of law, the burden shifts to the nonmovant to raise a genuine,
material fact issue sufficient to defeat summary judgment.  M.D. Anderson
Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000).  

B.        The Condition Precedent of Voter
Approval

The Texas Supreme Court concluded that the Authority
had breached its contracts with the Developers by failing to include the 2004
bond measure in the 2004 bond election.  See Kirby Lake IV, 320 S.W.3d
at 832.  We have determined previously that voter approval of such a bond
measure is a condition precedent to the Authority’s obligation to purchase the
facilities from the Developers.  See Clear Lake City Water Auth. v. Kirby
Lake Dev., Ltd., 123 S.W.3d 735, 745 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied).

Here,
the parties disagree about the consequences of the Authority’s breach.  In its
seventh and eighth issues,[9]
the Authority contends that the
Developers failed to prove their entitlement to judgment as a matter of
law on their contract claims because they did not conclusively prove that the
condition precedent of voter approval would have occurred but for the
Authority’s breach of contract, or, at a
minimum, that the Authority raised a genuine issue of material fact in this
regard.  The Developers, on the other hand, assert that the Authority’s breach
of the contract prevented the occurrence of the condition precedent—voter approval—thus
excusing the nonoccurrence of this condition.  We agree with the Developers.

Generally, a party who “prevents or makes impossible”
the occurrence of a condition precedent upon which its liability under a
contract depends cannot rely on the nonoccurrence to escape liability.[10]  The
Authority failed to include the 2004 bond measure in the September 2004 bond
election, resulting in a breach of the agreements with the Developers.  See
Kirby Lake IV, 320 S.W.3d at 832.  This breach by the Authority prevented
or made impossible the occurrence of the condition precedent of voter
approval.  See II Deerfield Ltd. P’ship v. Henry Bldg., Inc., 41 S.W.3d
259, 265 (Tex. App.—San Antonio 2001, pet. denied).  

The Authority counters by asserting that
nonoccurrence of this condition, i.e., voter approval, is  not excused
if the Authority can establish that the voters would not have approved the 2004
bond measure had it been included on the ballot.  In support of its position,
the Authority cites the Restatement (Second) of Contracts § 245 (1981).[11]  But this
section of the Restatement has not been adopted by the Texas Supreme Court. 
The Authority also cites Kiewit Texas Mining Co. v. Inglish, 865 S.W.2d
240, 245 (Tex. App.—Waco 1993, writ denied) and Fair v. Uhr, 310 S.W.2d
125, 128 (Tex. Civ. App.—Fort Worth 1958, writ ref’d n.r.e.).  Kiewit Texas
Mining Co. involved a repudiation of a contract, rather than a breach.  865
S.W.2d at 245.  The Waco Court of Appeals simply quoted comment (a) to section
255 of the Restatement for this proposition, without providing any other
authority.[12] 
Id.  Moreover, the Authority relies on section 245 of the Restatement to
support its position, rather than section 255.  In Fair v. Uhr, the Fort
Worth Court of Civil Appeals cited section 295 of the Restatement (First) of
Contracts, which, as noted above, is not the section upon which the Authority
seeks to rely here.  310 S.W.2d at 128.  We thus find these cases inapposite.[13]  

Under the facts of this case, we find more persuasive
the general rule in Texas that a party who “prevents or makes impossible” the
occurrence of a condition precedent upon which its liability under a contract
depends cannot rely on the nonoccurrence to escape liability.  Accordingly, the
Authority cannot rely on a projected failure of voter approval, which it
prevented or made impossible by breaching its agreement to include the bond measure
on every bond election held subsequent to the agreements, to escape its
liability to purchase the Developers’ facilities.  We conclude that the trial
court properly granted summary judgment to the Developers’ on this basis, and
overrule the Authority’s seventh and eighth issues.  

As a peripheral argument in the Friendswood
case only, the Authority asserts in its ninth issue that Friendswood has
“failed to prove conclusively that it provided proof to the Authority of its
ability to convey unencumbered title ownership to the facilities and assign all
warranties and guarantees relating to them.”  This argument puts the cart
before the horse:  this condition would have been triggered only after
the Authority had obtained voter approval to issue bonds for the purchase of
the facilities from Friendswood or otherwise stood ready to purchase the
facilities.  The Authority prevented or made impossible the condition precedent
of voter approval by failing to include the 2004 bond measure on the 2004 bond
election ballot, i.e., by breaching the agreement.  It would defy logic
to conclude that Friendswood’s alleged failure to fulfill a condition that
would have been prompted only if the Authority stood ready to purchase the
facilities could excuse the Authority’s breach, which prevented or made
impossible the Authority’s obligation to purchase the facilities.  We thus
overrule the Authority’s ninth issue in the Friendswood case.  

C.        Interest Rates

The award of interest in the trial courts’ final
judgments in these cases includes three separate components.  The first is the
interest expressly provided by Section 3.02 of the agreements as one of the
components of the purchase price of the Developers’ facilities.  This
contractual interest on the purchase price of the facilities ceased to accrue
several years before the September 2004 election and was included in the actual
damage awards to the Developers in the trial court’s judgments.  The second component
of the trial court’s final judgment is pre-judgment interest at the rate of 6
percent per year, which runs from the moment of breach (September 11, 2004)
until entry of the judgment.  The third component is post-judgment interest at
the statutory rate of 8.25 percent.  The Authority challenges the trial court’s
judgments as to all three interest components. 

1.         Interest
Specified in the Agreements

Based on conclusive proof that the Authority breached
the agreements and the excuse of the nonoccurrence of the voter-approval
condition precedent, the Developers are entitled to recover the benefit-of-the
bargain damages that they seek, namely payment of the “Purchase Price,” which
is defined in the agreements as follows:

The purchase price (the “Purchase Price”) to be paid by the
Authority for the sale and/or assignment described in the preceding Section
shall be as follows:  an amount equal to the sum of the amounts paid by the
Developer for design of the Facilities, for construction of the Facilities pursuant
to the Contracts (including any approved change orders), for inspection of
performance under the Contracts, and for clearing or other miscellaneous costs
(including costs of acquisitions of sites for any lift stations and sites for
water storage facilities included in the Contracts) attributable to
construction or maintenance of the Facilities, plus interest on such amounts
from the date of such payments to the date of reimbursement by the Authority at
the rate of interest equal to the lesser of (i) the rate of interest actually
incurred by the Developer to fund such payments or, if the purchase price is
paid in whole or in part from proceeds of bonds of the Authority, (ii) the
average net effective interest rate borne by such bonds; provided, however,
that if such purchase price is paid in whole or in part from proceeds of bonds
of the Authority, such purchase price or part thereof shall be subject to the
Rules and applicable orders of the [Texas Commission on Environmental Quality].

(emphasis added).  

Calculation of Damages in the Courts Below

The parties agreed that the interest component of the
Purchase Price would accrue for only two years because of certain limitations
on such interest imposed by the Texas Commission on Environmental Quality and
that any such interest would have ceased to accrue several years before the
September 2004 election.  See 30 Tex. Admin. Code § 293.50(a) (2010)
(Tex. Comm’n on Envtl. Quality, Developer Interest Reimbursement).  In the
judgments below, the trial court awarded each of the Developers the respective
Purchase Price as contract damages, calculating this amount by adding seventy
percent of the construction costs[14]
and two years’ interest on these costs.  As requested by the Developers, the
trial courts used an interest rate of 3.930798% based on the average net
effective interest rate of the bonds that were approved by the voters in the
September 2004 election.  There was no summary-judgment evidence regarding
(1) the rate of interest that any of the Developers actually incurred to
fund the construction of the facilities or (2) the average net effective
interest rate that would have been borne by bonds had they been issued to fund
payment of the Purchase Price under the agreements.  

In the Kirby Lake case, the parties stipulated
that the Authority reserved the right to contest the Kirby Lake
plaintiffs’ entitlement to interest on the ground that, even if the Authority
is liable for breach of contract, no bonds have been sold to purchase the Kirby
Lake plaintiffs’ facilities, and under the agreements the specified
interest rate is zero in the absence of such a bond sale.  However, the parties
also stipulated that “in the event that this legal argument is ultimately
rejected by the courts, . . . the developer interest under Section 3.02 of each
of the Agreements is recoverable in the following amounts: [the amounts awarded
by the trial court to the Kirby Lake plaintiffs].”  There is no such
stipulation in Friendswood.

The Authority’s Arguments Regarding the Interest Formula in the
Agreements

In its ninth issue in Kirby Lake and tenth
issue in Friendswood, the Authority argues that, because no bonds were
ever sold to pay for the Purchase Price under any of the agreements, the
Developers cannot prove what the interest rate is under the formula defined by
the Purchase Price.  Therefore, the Authority argues that the Developers cannot
recover this interest component of the Purchase Price as a matter of law and
these interest amounts should be deleted from the two trial court judgments. 
In the alternative, the Authority asserts that, if the formula could be used at
all, the average net effective interest rate borne by the bonds would be zero,
and therefore, the interest rate would be zero.  In Friendswood, the
Authority also argues that Friendswood failed to prove the applicable rate for
the interest component of the Purchase Price.  The Authority asserts that this
interest rate cannot be determined because Friendswood did not provide any
summary-judgment evidence regarding either (1) the rate of interest actually
incurred by Friendswood to fund the payments for the construction of the
facilities, or (2) the average net effective interest rate borne by any bonds
sold by the Authority to pay the Purchase Price. 

Benefit-of-the Bargain Measure of Damages

The Authority asserts that, because no bonds were
ever sold to pay for the Purchase Price under any of the agreements, the
Developers cannot prove what the interest rate is under the formula in the
definition of Purchase Price.  But “[t]he ultimate goal in measuring damages
for a breach-of-contract claim is to provide just compensation for any loss or
damage actually sustained as a result of the breach.”  Mays v. Pierce,
203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); Walden
v. Affiliated Computer Servs., Inc., 97 S.W.3d 303, 328 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied).  The Developers sought and the trial courts
awarded benefit-of-the-bargain damages based on the Purchase Price that the
Authority would have paid for the facilities.  The purpose of the
benefit-of-the-bargain measure of damages is to restore the injured party to
the economic position it would have been in had the contract been fully
performed.  Mays, 203 S.W.3d at 577.  

It is undisputed that the Authority never issued any
bonds to fund the payment of the Purchase Price to any of the Developers.  But
this fact does not prevent the Developers from proving what the average net
effective interest rate would have been for bonds sold by the Authority to pay
the Purchase Price if the Authority had fully performed under the agreements
and the voters had authorized such bonds in September 2004.  See Italian
Cowboy Partners v. Prudential Ins. Co. of Am., No. 08-0989, —S.W.3d—,—,
2011 WL 1445950, at *18 (Tex. Apr. 15, 2011) (concluding that evidence was
legally sufficient to support amount of damages awarded upon rescission of
lease based on expert testimony regarding amount of money necessary to restore
plaintiff to the position it would have been in had it not entered into lease
and noting that, under this measure of damages, plaintiff did not need to prove
damages based on the actual facts and circumstances regarding the latent defect
that entitled plaintiff to rescind lease); Keck, Mahin & Cate v. Nat’l
Union Fire Ins. Co. of Pittsburgh, 20 S.W.3d 692, 703 & n.5 (Tex. 2000)
(stating that, even if underlying litigation settled, to show causation in
negligence claim against attorneys, client has to prove that if underlying case
were tried and client had been represented by reasonably prudent attorneys,
judgment rendered in underlying case would have been more favorable than
settlement obtained by allegedly negligent lawyers); Dickinson v. Auto Ctr.
Mfg. Co., 594 F.2d 523, 529 (5th Cir. 1979) (holding that expert’s
testimony regarding the position plaintiff would have been in if defendant had
completely performed contract raised fact issue regarding amount of plaintiff’s
benefit-of-the-bargain damages).  

The Authority’s argument is based on the facts as
they actually occurred:  (1) the Authority breached the agreements; (2) the
2004 bond measure was not submitted to the voters for approval; and (3) no
bonds were issued to fund payment of the Purchase Price by the Authority under
any of the agreements.  But the benefit-of-the-bargain measure of damages is
not based on the facts as they actually occurred; rather, it focuses on what
the plaintiff’s economic position would have been if the contract had been
fully performed.  Mays, 203 S.W.3d at 577.  The Authority’s
argument is contrary to the benefit-of-the-bargain measure of damages and cases
applying it.  See Miga v. Jensen, 96 S.W.3d 207, 215–16 (Tex. 2002)
(measuring contract damages based on difference between value of stock at time
it was supposed to be sold to option-holder and costs that option-holder would
have incurred in purchasing stock, even though option-holder did not actually
incur these costs and option-holder did not receive stock on the date in
question); Avenell v. Chrisman Props., L.L.C., No.
14-08-01180-CV, 2010 WL 1379972, at *4 (Tex. App.—Houston [14th Dist.] Apr. 8,
2010, no pet.) (affirming award of benefit-of-the-bargain damages under lease
provision setting damages based on all rent remaining to be paid under lease,
even though, because of lessee’s breach, such amounts were not actually paid and
even though lessor no longer owned property in question); Huynh v. Phung,
No. 01-04-00267-CV, 2007 WL 495023, at *6–7 (Tex. App.—Houston [1st Dist.] Feb.
16, 2007, no pet.) (affirming award of benefit-of-bargain damages based upon
defendants’ promise to repay investment to plaintiff after sale of business,
even though business was never actually sold); Bowen v. Robinson, 227
S.W.3d 86, 96–99 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding
evidence was sufficient to support award of lost profits as
benefit-of-the-bargain damages based on evidence of economic position builder
would have been in if owner had not breached and if builder had been able to
fully perform under contract); Walden, 97 S.W.3d at 328–29 (measuring
contract damages based on difference between value of the stock on first day
that option-holder could have received stock and costs that option-holder would
have incurred in purchasing stock, even though option-holder did not actually
incur these costs and option-holder did not receive stock on date in question).

For these reasons, the failure of the Authority to
issue any bonds to fund the payment of the Purchase Price to any of the
Developers does not prevent the Developers from recovering
benefit-of-the-bargain damages based on evidence of what the interest rate
would have been under the contractual formula had the Authority fully performed
under the Agreement.  In addition, this failure does not mean that the average
net effective interest rate of the bonds in question must be deemed to be zero,
thus making the interest rate for the Purchase Price zero as well.  

Kirby Lake

In Kirby Lake, the Authority stated that if
the foregoing legal argument were rejected, then the Authority stipulated to
the amounts of interest under section 3.02 that the trial court awarded to the Kirby
Lake plaintiffs.  Because this court rejects the Authority’s legal
argument, the Authority’s stipulation supports the trial court’s award of these
interest amounts to the Kirby Lake plaintiffs as a matter of law, even
though there was no summary-judgment evidence as to either (1) the rate of
interest actually incurred by the Kirby Lake plaintiffs to fund the
payments for the construction of the facilities, or (2) what the average net effective
interest rate would have been on the Authority’s bonds if the Authority had
fully performed under the agreement and issued bonds to fund payment of the
Purchase Price.  Therefore, in Kirby Lake, we overrule the Authority’s
ninth issue.

Friendswood

In Friendswood, there is no such stipulation. 
Friendswood had the burden of conclusively proving the interest rate under the
formula in section 3.02.  See Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000).  There was no stipulation, nor was
there any evidence showing the lesser of (1) the rate of interest actually
incurred by Friendswood to fund the payments for the construction of the
facilities, and (2) what the average net effective interest rate would have
been on the Authority’s bonds if the Authority had fully performed under the
agreement and issued bonds to fund payment of the Purchase Price to
Friendswood. There was no evidence that a bond for the additional $1.1 million
would have had the same interest rate as the actual interest rate Friendswood incurred
to fund the payments for construction of the facilities.  On this record, though
Friendswood proved its entitlement to the $1,038,586.51 in construction costs
as a matter of law, the trial court erred in awarding Friendswood judgment as a
matter of law as to the interest component of the Purchase Price.  But the
Authority did not file a cross-motion for summary judgment on this point. 
Therefore, in Friendswood, we sustain the Authority’s tenth issue,
reverse the trial court’s judgment, and remand for further proceedings
regarding the amount of interest that Friendswood is entitled to recover under
section 3.02 of its agreement and for rendition of judgment in Friendswood’s
favor.  See Coward v. Gateway Nat’l Bank of Beaumont, 525 S.W.2d 857,
860 (Tex. 1975) (reversing summary judgment in favor of plaintiff and remanding
for further proceedings because court concluded plaintiff was not entitled to
summary judgment as to amount of attorney’s fees); A.W. Wright & Assoc.,
P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P., 993 S.W.2d 466,
470–71 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (remanding rather
than rendering or affirming as modified after reversing summary judgment that
trial court erroneously rendered in plaintiff’s favor).  

2.         Pre- and Post-Judgment Interest Rates

In issue ten in Kirby Lake and issue eleven in
Friendswood, the Authority asserts that the pre- and post-judgment
statutory interest rates imposed by the trial courts are improper because the
agreements themselves set the interest rate.  The Authority relies on the rates
of interest discussed in section 3.02 of the agreements, excerpted above, to
support this argument.

Post-judgment interest—and therefore pre-judgment
interest[15]—in
a contract case where the contract provides for interest is the lesser of the
interest rate specified in the contract or eighteen percent a year.  Tex. Fin.
Code Ann. § 304.002 (West 2006).  If the contract does not provide for
interest, then the post-judgment and pre-judgment interest rate is five to
fifteen percent a year based upon the prime rate.[16]  See id.
§ 304.003; see also ExxonMobil Corp. v. Valence Operating Co., 174
S.W.3d 303, 319–20 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (applying
section 304.003 to determine pre-judgment interest rate).  

As discussed above, the only interest rate upon which
the Authority relies is the reference in section 3.02 to the interest rate
applicable to the purchase price of the facilities.  We see no basis for that interest rate, with its particular
uses and limitations applicable only to the purchase price of the facilities,
to supplant the statutory interest rate.  Cf. Meridien Hotels, Inc. v. LHO
Fin. P’ship I, L.P., 255 S.W.3d 807, 824–25 (Tex. App.—Dallas 2008, no
pet.) (op. on reh’g) (concluding that interest rate defined in lease should not
be applied because it did not purport to make rate apply to unpaid holdover
rent and thus statutory rate of interest applied).  Further, the cases cited by
the Authority do not support its argument.  In Adams v. H & H Meat Products, Inc., the parties agreed by contract to the rate at which
past due invoices would bear interest.  41 S.W.3d 762, 780 (Tex. App.—Corpus
Christi 2001, no pet.).  In AU Pharmaceutical, Inc. v. Boston, the creditors expressly agreed that the funds to
which they were entitled “shall not appreciate with interest or by any other
means, the parties specifically agreeing that any interest to be charged on the
Settlement Proceeds to equal zero (0) percent.”  986 S.W.2d 331, 333 (Tex.
App.—Texarkana 1999, no pet.).  

The parties’
agreements do not address any interest rates related to past due amounts;
instead, as discussed above, the only interest rates contemplated by the
agreements are for interest due to the Developers on the purchase price of
their facilities.  Accordingly, the applicable pre- and post-judgment interest
rates must be determined under section 304.003, which applies when section
304.002 does not.  See Tex. Fin. Code Ann. § 304.003; see also
Meridien Hotels, Inc., 255 S.W.3d at 824–25.  We overrule the Authority’s
pre- and post-judgment interest rate issues.

D.        Writ of Execution and “Injunctive” Relief

In its final issue in Kirby Lake, the
Authority complains that the district court’s writ of execution to enforce the
judgment is erroneous in that it violates public policy.  Although the final
judgment authorizes issuance of a writ of execution should the Kirby Lake plaintiffs
seek one, nothing in our record indicates that a writ of execution has issued. 
Therefore, determining this issue would be premature at this point.  If and
when the Kirby Lake plaintiffs seek a writ of execution, the Authority
may then raise this issue.  We thus overrule the Authority’s final issue in the
Kirby Lake case.

In Friendswood, the Authority contends that
the trial court had no basis to instruct the Authority to “levy, assess and
collect taxes or assessments to pay the amounts awarded to [Friendswood] in this
Final Judgment.”  However, the Texas Water Code explicitly authorizes “[a]ny
court in the state rendering judgment for debt against a district [to] order
the board to levy, assess, and collect taxes or assessments to pay the
judgment.”  Tex. Water Code Ann. § 49.066(b) (West 2008).  Section 49.066(b) of
the Texas Water Code authorizes any court in this state to order a water
authority to assess taxes to pay judgments for contract damages.  Id.  The
Authority asserts in a conclusory manner that this section contemplates a
“mandamus remedy.”  The Authority cites no authority for this proposition, and
none of the cases cited in this section of its brief concern the Texas Water
Code or any other statute clearly authorizing such a remedy.[17]  Because
the trial court’s judgment tracks the statutory language permitting a court
rendering judgment to order a water authority board to levy, assess, and
collect taxes or assessments to pay the judgment, we overrule the Authority’s
final issue in the Friendswood case.

CONCLUSION

We have sustained
the Authority’s tenth issue regarding the award of interest in the Friendswood
case.  Accordingly, in Friendswood only, we reverse the trial
court’s judgment and remand for further proceedings regarding the amount of
interest that Friendswood is entitled to recover under section 3.02 of its
agreement and for rendition 

of judgment in Friendswood’s favor.  Having overruled all of the Authority’s
issues in the Kirby Lake case, we affirm that judgment. 

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel consists of Chief Justice Hedges
and Justices Frost and Christopher.









[1]
In a separate appeal, the Supreme Court affirmed this court’s ruling that the
Authority’s actions did not rise to the level of a taking.  Kirby Lake IV,
320 S.W.3d at 832, aff’g  321 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2008).





[2] In this opinion, we refer to Cause No. 14-07-00404-CV
as “Friendswood” and to Cause No. 14-08-00013-CV as “Kirby Lake.”






[3]
Where necessary, we will refer to the developers involved in Kirby Lake as
the “Kirby Lake plaintiffs.”  These developers include Kirby Lake
Development, Ltd., Miter Development Co., L.L.C., and Taylor Lake, Ltd.





[4]
Subsequent to these elections, the Developers, excluding Friendswood
Development Co., sued the Authority for breach of contract, quantum meruit, and
an unconstitutional taking based on the Authority’s use of their facilities to
provide water, sewer, and drainage services to customers in the Developers’
developments.  The jury found that the Authority had breached its contract, and
the trial court ordered the Authority to levy, assess, and collect taxes or
assessments to pay the judgment.  As is relevant here, however, this Court
reversed and remanded to the trial court because we concluded that the
contracts unambiguously required the Authority to reimburse the Developers only
with voter-approved bond funds that were legally available and allocated for
that purpose, i.e., that voter approval of bond issuance is a condition
precedent to the Authority’s obligation to purchase the facilities.  See
Clear Lake City Water Auth. v. Kirby Lake Dev. Co., 123 S.W.3d 735, 756
(Tex. App.—Houston [14th Dist.] 2003, pet. denied).





[5]
The contract interpretation issue, as well as the Authority’s plea to the
jurisdiction, the Authority’s reserved powers doctrine issue, and the
Developers’ takings issue, were all decided by the Supreme Court in its Kirby
Lake opinion.  See Kirby Lake IV, 320 S.W.3d at 832–34.  The
Supreme Court concluded that the Authority was not immune to suit, the
contracts’ reference to “any” bond election referred to every bond election the
Authority chose to hold, the agreements did not run afoul of the reserved
powers doctrine, and the Developers consented to any alleged taking of the
facilities.  Id.  Additionally, the Supreme Court held that the
Authority had breached its agreements with the Developers by failing to include
the 2004 bond measure in the September 2004 bond election.  Id.at 832. 
The Supreme Court’s opinion disposed of the Developers’ first through sixth
issues in both cases.





[6]
This interest was awarded from September 11, 2004, which is the date that the
Authority breached the agreements by failing to include the 2004 bond measure in
the bond election. 





[7]
See footnote 6, supra.





[8]
The motion for new trial in Kirby Lake was overruled by operation of law
on November 20, 2006, although the trial court signed a written order denying
the motion on November 27, 2006.  The Authority’s motion in Friendswood
was overruled by operation of law.





[9]
As noted above, the Authority’s first through sixth issues were disposed of by
the Supreme Court’s opinion in Kirby Lake IV.  





[10]
See SLT Dealer Grp., Ltd. v. AmeriCredit Fin’l Servs., Inc.,
—S.W.3d—, No. 01-09-00613-CV, 2011 WL 662717, at *7 (Tex. App.—Houston [1st
Dist.] Feb. 17, 2011, no pet. h.); II Deerfield Ltd. P’ship v. Henry Bldg.,
Inc., 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet. denied); Heritage
Life Ins. Co. v. Heritage Holding Corp., 751 S.W.2d 229, 234 (Tex.
App.—Dallas 1988, writ denied); Rich v. McMullan, 506 S.W.2d 745, 747
(Tex. Civ. App.—San Antonio 1974, writ ref’d n.r.e.); Ebberts v. Carpenter
Prod. Co., 256 S.W.2d 601, 617–18 (Tex. Civ. App.—Beaumont 1953, writ ref’d
n.r.e.); Marvin v. Rogers, 53 Tex. Civ. App. 423, 426, 115 S.W. 863, 865
(Dallas 1909, no writ).  





[11]
Section 245 states, “Where a party’s breach by non-performance contributes
materially to the non-occurrence of a condition of one of his duties, the
non-occurrence is excused.”  Restatement (2d) of Contracts § 245.  





[12]
Section 255 of the Restatement (Second) of Contracts states:  “Where a party’s repudiation
contributes materially to the non-occurrence of a condition of one of his
duties, the non-occurrence is excused.”  Restatement (2d) of Contracts § 255
(emphasis added).  Comment (a) to this section provides that if the condition
would not have occurred in any event, “non-occurrence is not excused.”  Id.
cmt. (a).





[13]
Neither case has been cited for the particular propositions the Authority
relies on.  





[14] The amount
of the construction costs incurred by each of the Developers is not in
dispute.  The parties agree that the principal amount used in calculating the Purchase
Price is seventy percent of the costs in question.





[15]
In a breach of contract case, the pre-judgment interest rate is the same as the
post-judgment interest rate.  See Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 532 (Tex. 1998).  Pointing to this
proposition, Friendswood asserts in its briefing that this Court should reform
the judgment to reflect pre-judgment interest at 8.25 percent, rather than 6
percent as awarded by the trial court.  However, Friendswood did not file a
notice of appeal; thus it is not entitled to any affirmative relief.  See Tex.
R. App. P. 25.1(c).  





[16]
The parties agree that the applicable statutory post-judgment interest rate at
the time of judgment in these cases was 8.25 percent.





[17]
In its motion for reconsideration of summary judgment filed in the trial court,
the Authority stated:  “The Authority does not question the Court’s power to
compel the raising of taxes to satisfy a judgment against a water district.”