Opinion issued August 6, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00188-CV

————————————

**MICHAEL TODD WRAY, Appellant**

**V.**

**RICHARD PICARD, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CV-0640**

## MEMORANDUM OPINION

In this contract dispute, appellee, Richard Picard, sued his former business partner, appellant, Michael Todd Wray, for breach of an oral agreement. After a bench trial, the court ruled that Wray promised to be insured by a life insurance

policy for Picard's benefit and to comply with the provisions of that policy in exchange for Picard's investment in Wray's business. The trial court also ruled that, since 2017, Wray had been in breach of his promise to comply with the policy provisions by refusing to certify his total disability, which would waive the $10,530 annual premium that Picard was otherwise required to pay. The trial court awarded Picard damages in the amount of $52,650 plus attorney's fees, prejudgment interest, and contingent attorney's fees for appeal. In three issues, Wray challenges the trial court's personal and subject-matter jurisdiction, the legal sufficiency of the evidence supporting the trial court's finding that an agreement existed and that he breached the agreement, and the award of damages.

We affirm.

## Background

In 2008, Wray owned a digital media company, Foto Plaques, in which Picard was interested in investing. Picard offered to invest $50,000 in Foto Plaques on the condition that Wray, who was Foto Plaques' sole and "key" employee, be insured under a "keyman" life insurance policy which, according to trial testimony, would "guarantee[] that, if anything should happen to the keyman in the business, which at that particular time was just one person[,Wray], the investment would be covered by an insurance policy, things like permanent disability, things like death." As Wray conceded at trial, he was in "excellent" health at the time and he agreed to be insured

2

by the keyman policy owned by and for the benefit of Picard, who paid the policy premiums. This oral agreement between Wray and Picard for Wray to be insured for Picard's benefit and to comply with the policy requirements as conditions of Picard's investment in Wray's company is the subject of this appeal.

Wray completed and signed an application for the policy, in which he represented that Picard and Picard's wife would own the policy for their benefit, and Wray listed Picard and his wife as "[i]nvestors in [b]usiness[.]"The application stated in handwriting that it was for "Term 10+" in the amount of "$500,000." Wray authorized the insurance company to obtain "all information, records or knowledge" about his physical or mental condition, and Wray's signature acknowledged that the insurance company might release information to other companies "related to [his] application or the policy or claim thereunder."

Pursuant to Wray's application, a life insurance policy was issued effective in March 2008, and it showed a "Final Term Date" of March 18, 2063. The policy reflected an annual premium of $535 guaranteed for the first ten years, which included a $110 additional premium to waive the annual premium in the event Wray became totally disabled. To waive the premium based on total disability, the policy required annual notice of the disability claim by completing the insurance company's required forms. The policy stated that the annual premium remained

consistent at $535 for ten years, then increased significantly and consistently beginning in the eleventh year.

The policy also contained a conversion provision authorizing either party to convert the life insurance policy to a new policy under certain circumstances. The policy expressly stated that the insurance company could convert the policy to a whole life plan of its choosing if, on the last day that conversion was allowed, the annual premiums were being waived for total disability.

In 2013, Wray became totally disabled, causing him to cease operations of Foto Plaques and dissolve the business in 2015. Picard lost his $50,000 investment. Picard learned that Wray had become totally disabled in 2015, and he asked Wray to certify his total disability to the life insurance company to waive the annual premiums on the keyman life insurance policy. Wray complied by certifying his disability in 2015, 2016, and 2017, and the insurance company waived the premiums for those years.

In 2018, Wray continued to be totally disabled and, pursuant to the conversion provision of the life insurance policy, the life insurance company converted the policy to a whole life policy. The whole life policy also allowed for the waiver of the annual premium based on total disability. The annual premium for this policy was $10,530, a significant increase from the prior $535 annual premium. Also in 2018, Wray refused numerous requests from Picard to certify his disability

4

information to the insurance company, and the premium for that year was not waived.

On May 17, 2018, Picard filed an original petition alleging that he had an implied and oral contract with Wray for Wray to be insured under a keyman life insurance policy and to comply with the terms of the policy, including certifying any total disability, but that Wray breached the agreement by failing to complete the necessary forms to certify his total disability. Picard also requested a declaration that Wray was required to complete the necessary forms to certify his disability and waive the annual premiums.

Wray filed a pro se motion to dismiss, generally disputing Picard's allegations and challenging venue in Galveston County. Wray also filed an answer generally denying Picard's allegations. In October 2018, Wray, who had since retained counsel, supplemented his answer and filed a motion to dismiss for lack of jurisdiction, generally alleging that Picard failed to state a claim, that Picard's claims arose from actions performed in Ohio that lacked any connection with Texas, and that his claims were preempted by federal law. Wray also specially excepted to the lack of jurisdictional facts in Picard's petition and denied that Picard's petition gave fair notice of his claims. The record on appeal does not include a ruling on either of Wray's two motions to dismiss or on his special exceptions.

The court held a bench trial on December 17, 2018. Picard testified that he invested in Foto Plaques because it had projected multi-million-dollar returns. Picard testified that he asked Wray to be insured by a keyman life insurance policy as a condition of his investment, and that Wray, who was "a triathlete" and in very good health, readily agreed. Picard also testified that Wray promised to comply with the provisions of the policy. Picard testified that the policy was intended to last "all of [Wray's] life." Picard acknowledged that his agreement with Wray was oral, not written, and he testified that he had paid the annual premiums because he owned the policy.

Picard testified that, because Wray agreed to the conditions, he invested $50,000 in Foto Plaques. Picard introduced the application for the keyman life insurance policy, which was signed by Wray, and the original life insurance policy as well as the converted whole life policy.

Picard testified that he learned Wray had become totally disabled and dissolved Foto Plaques in 2015, resulting in a total loss of Picard's investment. Picard introduced a March 2015 letter from Wray to the insurance company, in which Wray wrote that he had delayed informing the insurance company of his disability since 2013 because he "did not pay the premiums on these policies and was unaware that they even still existed, or had a [w]aiver of [p]remium benefit . . . ." Picard testified, and Wray conceded, that Wray provided the required

6

documentation to the insurance company to certify his total disability and waive the premiums in 2015, 2016, and 2017, and the annual premiums for those years were waived. However, Picard testified that Wray refused to provide the required disability information in 2018 without providing any reason.

Wray acknowledged that he agreed to be insured by a keyman policy because, "given [his] health," which he described as "excellent" at the time, "[he] had no issue with it. So, [he] agreed and [he] complied with" Picard's request for the keyman policy. Wray acknowledged that he agreed to and completed the application for the policy, which he testified was for a ten-year term, although he acknowledged on cross-examination that the application he had signed stated, "Term 10+[.]" Wray also testified that he was concerned about continuing to disclose his health information to the insurance company because he wanted to keep his information private and because Foto Plaques, the company in which Picard had invested, had ceased operations. However, Wray acknowledged that he had provided his disability information to the insurance company in 2015, 2016, and 2017, which is after Foto Plaques ceased operations and dissolved. Wray also acknowledged that, when he signed the life insurance application, he authorized the company to release only information related to his application, and not any other information.

On cross-examination, Wray testified about his life expectancy. He testified that he would like "to live as long as [he] can," that he was seeking medical treatment for his health problems, and that he would "like to" live at least another five years.

After both parties rested, the trial court orally ruled that "there was an understanding or agreement between [the parties] for the policy to be issued. Mr. Wray filled out the forms." The court also stated that "clearly [Wray] knew that he . . . had an obligation to [Picard]," recognizing that "[Picard] went to the actual or added step of an extra premium [for the waiver of the annual premium on the basis of disability], paid that extra premium for exactly the relief which they are seeking." The court awarded Picard $52,650, which was the total of five years' worth of annual premiums for the converted whole life policy. The court also awarded Picard $1,689.15 in prejudgment interest, $3,000 in trial-level attorney's fees, and contingent attorney's fees for any appeal. The trial court entered a final judgment confirming in writing its oral pronouncement.

Wray requested findings of fact and conclusions of law, and he filed a motion for new trial generally challenging the sufficiency of the evidence on the existence of a contract and on damages. Wray's motion for new trial was overruled by operation of law.

The trial court entered findings of fact and conclusions of law, which included the following:

## A. FINDINGS OF FACT

. . . .

5.     This suit arises from an investment by Richard Picard in a business owned and operated by Michael Todd Wray.

6.     In 2008, . . . Wray offered a business investment to [Picard]. The investment was projected to generate[] millions of dollars of return for its investors.

7.     On or about the year 2007, . . . Picard invested $50,000 with . . . Wray, on the condition that Mr. Wray would agree to be insured under a key-man life insurance policy and [to] comply with the conditions of that policy. Mr. Wray promised to comply with the terms of the life insurance policy to secure Mr. Picard's investment, including verifying his disability, if any, to the life insurance company.

8.     [Picard] is responsible for paying the premiums of the life insurance policy. . . . Picard is the beneficiary of the life insurance policy.

. . . .

10.     In 2013, [Wray's] business failed. The value of Picard's investment was a total loss.

11.     The life insurance policy contains a waiver of premium provision that waives annual premiums upon the disability of Mr. Wray.

12.     In 2013, Mr. Wray declared that he had a medical disability. He cooperated with filing the necessary forms and medical information so the [l]ife [i]nsurance [c]ompany could verify his disability.

13.     The premiums were waived for 2015–2017 pursuant to the waiver of premium [provision].

14.     In 2018, the life insurance policy was converted to a [w]hole [l]ife [p]olicy at the sole option of the insurance company.

15. Since 2017, Mr. Wray [has] refused to provide the necessary documentation to the life insurance company to verify his disability.

16. Without providing the documentation of [Wray's] disability, the premium for the whole life policy is $10,530.00 [per] year.

17. Mr. Wray expects to, and will in all reasonable probability, live at least another 5 years.

18. Without the waiver of premium, Mr. Picard will incur damages in the amount of the premium for every year before Mr. Wray's death. The expected premiums to be paid over those 5 years is $52,650.00, representing damages incurred by . . . Picard.

19. The Court finds that there is sufficient and segregated evidence to support an award of reasonable attorney's fees to . . . Picard in the amount of $3,000.00 for prosecution of this case through judgment.

20. The Court finds [that] there is sufficient evidence that if . . . Picard prevails in an appeal of this judgment to an intermediate court of appeals, . . . Picard will incur additional reasonable and necessary attorney's fees for services on appeal . . . .

## B.  CONCLUSIONS OF LAW

21. The Court has jurisdiction over this matter.

22. Galveston County is a proper venue for this suit.

23. [Wray] promised to and is obligated under the underlying contracts to submit information to the life insurance company to verify his continuing disability.

24. [Wray] breached his promise and his contract to submit information to the life insurance company verifying his disability.

This appeal followed.

## Jurisdiction

In his first issue, Wray challenges the trial court's exercise of personal jurisdiction over him and its exercise of subject-matter jurisdiction over the proceeding.

### A. Standard of Review and Governing Law

Whether a court has personal or subject-matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power. Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010).

"To render a binding judgment, a court must have both subject matter jurisdiction over the controversy and personal jurisdiction over the parties." *Kimich*, 310 S.W.3d at 871 (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)). Subject-matter jurisdiction refers to the court's power to hear a particular type of lawsuit, whereas personal jurisdiction concerns the court's power to bind a particular person or party. *Link*, 925 S.W.2d at 594.

### B. Personal Jurisdiction

Wray contends that the trial court lacked personal jurisdiction over him because Picard failed to assert sufficient jurisdictional allegations in his petition, specifically any allegation that Wray was a Texas resident or was served with process in Texas or that there is any connection between Texas and the subject matter

11

of the lawsuit. Picard responds that the trial court properly exercised personal jurisdiction over Wray because he was a Texas resident when suit was filed, that Wray failed to follow the due-order-of-pleading rules and therefore generally appeared, and that Wray waived personal jurisdiction by seeking affirmative relief in a counterclaim before seeking a ruling on personal jurisdiction.

A nonresident defendant may challenge a trial court's exercise of personal jurisdiction over him by filing a special appearance, a sworn motion that challenges the trial court's jurisdiction without submitting to the court's jurisdiction. TEX. R. CIV. P. 120a(1). Rule 120a requires a defendant to file a special appearance before filing any other plea, pleading, or motion, which is commonly referred to as the due-order-of-pleading requirement. *Id.* A defendant must strictly comply with the procedural requirements of Rule 120a, including the due-order-of-pleading requirement, or he waives personal jurisdiction and enters a general appearance. *Id.*; *see Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.— Houston [1st Dist.] 2016, no pet.).

Wray did not file a special appearance in the trial court, which was the proper motion to contest personal jurisdiction. *See* TEX. R. CIV. P. 120a(1). Instead, he first filed a motion to dismiss that did not address personal jurisdiction, followed by an answer, a second motion to dismiss for lack of subject-matter jurisdiction, and a supplemental answer. Because Wray did not strictly comply with the due-order-of-

12

pleading requirement, we hold that he entered a general appearance and waived any challenge to personal jurisdiction. *See* TEX. R. CIV. P. 120a(1); *Jones*, 496 S.W.3d at 224.

## C. Subject-Matter Jurisdiction

Wray generally challenges the trial court's subject-matter jurisdiction over the proceedings. Picard responds that the trial court had jurisdiction over this contract dispute because Picard had standing to sue and Wray performed his obligations in Texas and breached the contract in Texas. Because subject-matter jurisdiction cannot be waived and may even be raised for the first time on appeal, we address the issue. *E.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (citations omitted).

A trial court must have subject-matter jurisdiction to decide the merits of a case. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Subject-matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable. *Id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–46). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Subject-matter jurisdiction is never presumed and cannot be waived. *Id.* at 445.

13

For a controversy to be live and justiciable, there must be a real controversy between the parties that will actually be resolved by the judicial relief sought. *Gomez*, 891 S.W.2d at 245–46. Here, Picard claimed that Wray breached an oral contract to be insured under a keyman life insurance policy and to comply with its terms, and Picard sought damages for the breach and a declaratory judgment. This is a live, real controversy capable of resolution by the relief Picard sought.

Standing is a component of a court's constitutional authority to decide a case. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) ("Standing is a constitutional prerequisite to suit."). Texas's standing doctrine parallels the federal test for Article III standing, and we consider precedent from the United States Supreme Court when considering standing to sue in Texas courts. *Id.* at 154. To establish standing, a plaintiff must show: (1) an injury in fact, which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by the requested relief. *Id.* at 154–55 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Here, Picard alleged that Wray agreed to be insured by a life insurance policy and to comply with the terms of the policy for the benefit of Picard. After complying for several years, Wray refused to continue complying, which Picard alleged was a breach of their agreement that caused Picard damages. Picard also asserted a cause

14

of action for a declaratory judgment that Wray was required to complete the necessary forms to waive the premiums. Picard testified that he had paid the annual premium of $535 through 2015, when he learned Wray had become totally disabled, which, upon completion of the proper forms, waived the annual premium. Picard also testified that Wray provided information about his disability to the insurance company as required by the policy until 2017, and that Wray refused to continue complying in 2018, which Wray did not dispute. At the time Wray began refusing to provide the required information about his disability, the annual premiums had increased to $10,530.

Picard has alleged that he was injured by Wray's breach of contract. *See Heckman*, 369 S.W.3d at 154–55. Specifically, Wray's refusal to continue providing disability information to the insurance company to waive the annual premiums forced Picard to pay the premiums that otherwise would have been waived. Picard thus asserted a concrete and particularized injury in fact. *Id.* Moreover, Wray began refusing to provide disability information in 2018, the year Picard filed this lawsuit, and therefore Picard alleged an actual or imminent injury. *Id.*

Picard's injury is also fairly traceable to Wray's conduct. *Id.* Had Wray continued providing disability information to the insurance company, as he had done in previous years, the annual premiums would have been waived and Picard would not have had to pay it. Picard's having to pay the premiums was, therefore, fairly

15

traceable to Wray's refusal to provide disability information as required by the policy.

Finally, Picard's injury is likely to be redressed by the relief he requested. *Id.* Picard requested damages in the amount of future premiums he would be required to pay because of Wray's refusal to provide disability information. Picard also sought a declaration that Wray was obligated to comply with the policy terms. Either remedy would likely redress Picard's injury. *Id.* We therefore hold that the trial court properly exercised subject-matter jurisdiction over Picard's claims for breach of contract and declaratory judgment.

We overrule Wray's first issue.

## Breach of Contract

In his second issue, Wray challenges the legal sufficiency of the evidence supporting the trial court's findings that an agreement existed between the parties in 2018 and that Wray breached the agreement.

## A.     Standard of Review

We review a trial court's conclusions of law de novo. *Lynch*, 595 S.W.3d at 683. In a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the legal sufficiency of the evidence to support the findings using the same sufficiency standards as when we review a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Thompson v. Smith*, 483 S.W.3d 87,

93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When challenged, a trial court's findings of fact are not conclusive if, as here, there is a complete reporter's record on appeal. *Guimaraes v. Brann*, 562 S.W.3d 521, 548–49 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). If the evidence supports them, the trial court's findings of fact are binding. *Thompson*, 483 S.W.3d at 93; *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. denied).

When conducting a legal sufficiency review, we consider evidence in the light most favorable to the finding, and we indulge every reasonable inference that would support the finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could do so, and we disregard contrary evidence unless a reasonable factfinder could not do so. *Id.* at 827. In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to give their testimony, and the court may choose to believe one witness and disbelieve another. *Id.* at 819. A legal sufficiency challenge fails if more than a scintilla of evidence supports the finding. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).

## B.     Governing Law

The elements of a valid contract are (1) an offer, (2) acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v.*

*S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). To show that a defendant breached a contract, a plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *Id.* (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885, 894 (Tex. 2014); *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In determining the existence of an oral contract, courts look to the communications between the parties and to the acts and circumstances surrounding those communications. *Prime Prods., Inc.*, 97 S.W.3d at 636.

Anticipatory breach, or repudiation, is a party's unconditional refusal to perform a contract in the future, which can be expressed either before performance is due or after partial performance. *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 216 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)).

18

"'To constitute a repudiation or anticipatory breach, the party to the contract must have absolutely repudiated the contract without just cause.'" *Id.* (quoting *Van Polen*, 23 S.W.3d at 516). Once a party repudiates a contract, the non-repudiating party may continue performing under the contract and insist on performance by the party in default. *Id.* (citing *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)).

## C.    Analysis

Wray concedes that he agreed to be insured under a keyman life insurance policy during the initial ten-year period beginning in 2008. However, he argues that the contract did not extend into 2018 and that, therefore, he did not breach any contract by not submitting his disability information to the insurance company in 2018. Wray argues that significant changes in the parties' performances in 2018 show a lack of agreement, particularly that the original life insurance policy converted to a separate policy, the annual premiums significantly increased from $535 to $10,530, Picard's benefit of the bargain significantly increased, and Wray was required to submit disability information annually. Wray also argues that, at the time he applied for the life insurance policy in 2008, he believed the policy would only be in effect for ten years, he did not know the amount of the annual premiums after the initial ten-year period, and he was not provided a copy of the policy. Thus, Wray argues that the trial court erred in finding that an agreement existed in 2018

and that his refusal to provide the disability information to the insurance company was not a breach of any agreement. Picard responds that the policy expressly stated it had a final term date of 2063, not limited to a ten-year period ending in 2018, that Wray knew the policy could be converted at the insurance company's sole discretion, and that Wray's obligation to provide disability information never changed.

At trial, neither party disputed that Wray agreed to be insured under a keyman life insurance policy beginning in 2008 for at least ten years; the parties only disputed whether Wray had any continuing obligation under the contract beginning in 2018. Picard testified that Wray had complied with the policy provisions by documenting his total disability to the insurance company in 2015, 2016, and 2017, and that Wray refused to provide disability documentation in 2018 without providing any reason. Wray acknowledged that Picard or Picard's wife had asked Wray to comply "numerous times" in 20 or 25 emails, but he did not comply in 2018. As factfinder, the trial court could resolve the party's conflicting testimony about whether the agreement extended beyond 2017 in Picard's favor. *City of Keller*, 168 S.W.3d at 819; *see In re. D. Wilson Constr. Co.*, 196 S.W.3d 775, 781 (Tex. 2006) (orig. proceeding) ("Ambiguity [in terms of a contract] does not exist merely because the parties assert forceful and diametrically opposing interpretations.").

20

Picard also introduced the application for the keyman life insurance policy that was completed and signed by Wray. This application is the only writing in the record on appeal evidencing Wray's intent when entering into the oral agreement with Picard. *See Prime Prods., Inc.*, 97 S.W.3d at 636 (considering contracting parties' communications and circumstances surrounding those communications in determining existence of contract). The application states that it is for a "Term 10+" policy in the amount of "$500,000" to be owned by and for the benefit of Picard and Picard's wife. When asked on cross-examination at trial about the "Term 10+" language in the application, Wray acknowledged that it was on the form and he could not reconcile his belief that his obligation ended after ten years with the "10+" language in the application, only testifying that "[t]he 'plus' wasn't specified." Wray's failure to receive a copy of the policy does not undermine the application, which he signed, showing the policy term of "10+" years. This evidence supports the trial court's findings that Wray promised to be insured under and to comply with the terms of the keyman life insurance policy and the trial court's implied finding that Wray's promise extended beyond 2017. *See Thompson*, 483 S.W.3d at 93.

Wray conceded at trial that Picard or Picard's wife requested approximately twenty-five times that Wray comply with the policy provisions by submitting his disability information in 2018, but that he refused without providing a reason. Wray testified that he refused because of general privacy concerns and because the

21

company securing Picard's investment had dissolved. However, Wray also conceded that he had provided his disability information in 2015, 2016, and 2017 to waive the premiums, which was after his business ended. We conclude, therefore, that Wray's conduct constituted an unconditional, absolute repudiation of his agreement with Picard without just cause. *See Bilello*, 414 S.W.3d at 216.

Wray argues that the policy's conversion to a whole life policy and its premium increase in 2018 represented a significant change in the terms of the agreement and a significant increase in the benefit derived by Picard and therefore showed a lack of agreement. We disagree. Wray's argument confuses the terms of the life insurance policy—which did change—with the terms of his oral agreement with Picard—which did not change. Under his agreement with Picard, Wray promised to be insured by a life insurance policy and to comply with the terms of the policy. Wray performed as he had promised from 2008 through 2017, including by providing disability information to waive the annual premiums in 2015, 2016, and 2017. In 2018, Wray was also required to provide his disability information, but he refused and therefore repudiated his agreement with Picard. Thus, the terms of the oral agreement between Wray and Picard did not change in 2018.

Similarly, Picard's benefit under his oral agreement with Wray did not significantly increase. The only benefit Picard received from Wray under the oral agreement was for Wray to apply for the policy, which he did, and to comply with

22

the terms of the policy, including providing disability information, and Wray complied until 2017. After 2017, the only benefit Picard expected was Wray's continued compliance with the policy terms, including by providing documentation of his total disability. Thus, even if the amount of annual premiums saved by Picard because of the waiver increased in 2018, his benefit from his agreement with Wray did not increase.

We overrule Wray's second issue.

**Award of Future Damages**

In his third issue, Wray contends that the trial court erred by awarding future damages because Picard did not assert a cause of action for anticipatory breach or repudiation and no evidence supports the claim. Alternatively, Wray contends that the trial court erred by not reducing the award of future damages to its current value. Picard responds that he needed only to prove the reasonable amount of future expenses, which he contends was the annual premium of $10,530 per year for five years for a total of $52,650.

**A.     Standard of Review and Governing Law**

We review a trial court's findings for legal sufficiency using the same standards set forth above.

In breach of contract cases, the general rule for damages is that "the complaining party is entitled to recover the amount necessary to put him in as good

a position as if the contract had been performed." *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "Put another way, in a breach-of-contract case, the normal measure of damages is just compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain." *Id.* The measure of damages for repudiation of a contract is the "total of all accrued payments plus interest, plus the present value of all unaccrued payments that the plaintiff would have received if the contract had been performed." *Republic Bankers Life Ins. Co. v. Jaeger*, 551 S.W.2d 30, 31 (Tex. 1976) (per curiam) (citing *Universal Life & Accident Ins. Co. v. Sanders*, 102 S.W.2d 405, 406 (Tex. [Comm'n Op.] 1937); *Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied) (citation omitted)); *Pollack v. Pollack*, 39 S.W.2d 853, 855 (Tex. Comm'n App. 1931, holding approved) (citations omitted). A factfinder has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).

## B.  Analysis

Wray first argues that Picard was not entitled to future damages because he did not assert a cause of action for anticipatory breach or repudiation or request future damages in his original petition. Wray filed special exceptions challenging Picard's petition as defective. *See* TEX. R. CIV. P. 91. However, failure to obtain a timely hearing and a ruling on special exceptions waives the exceptions and does not

preserve them for appeal. *Davis v. Angleton Indep. Sch. Dist.*, 582 S.W.3d 474, 481 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). At trial, Wray's counsel acknowledged that Wray did not obtain a ruling on his special exceptions. Thus, Wray did not preserve this issue for appeal. *Id.*

At trial, Picard testified that he believed Wray would live at least another five years, and he asked the trial court to award him five years' worth of the $10,530 annual premium. He also introduced the converted whole life policy proving the amount of the annual premiums. Wray denied that he expected to live at least five years until the age of sixty, although he acknowledged that "[he would] like to live as long as [he] can" and that "[he would] like to" have a goal of living at least another five years, and he agreed that he was seeking medical treatment for his health issues. Based on this evidence, the trial court found that "Wray expects to, and will in all reasonable probability, live at least another 5 years" and that, "[w]ithout providing the documentation of [Wray's] disability, the premium for the whole life policy is $10,530.00 [per] year."

Wray argues that the trial court erred by awarding Picard five years of future annual premiums without discounting for their present value. However, Wray's argument misreads the trial court's finding that he would live "*at least* another five years." (Emphasis added.) A factfinder has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co.*, 79 S.W.3d at 566. Wray

25

testified that he would like to live as long as possible and that he would like to have a goal to live at least another five years. Although the trial court based its damages award on Picard's request for five years' worth of annual premiums, the evidence supported Wray's living longer than—or "at least"—five years. Therefore, we conclude that the trial court's award of damages was within the range of evidence presented at trial. *See Jaeger*, 551 S.W.2d 30; *Pollack*, 39 S.W.2d at 855. We hold that the evidence is legally sufficient to support the trial court's damages award.

We overrule Wray's third issue.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Kelly, and Landau.